IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CORNHUSKER ENERGY LEXINGTON, LLC, a Nevada Limited-Liability Company, | ) ) ) | 8:04CV586 |
| | ) | |
| Plaintiff/Counterclaim-Defendant, | ) ) | |
| v. | ) | MEMORANDUM AND ORDER |
| | ) | |
| PROSPECT STREET VENTURES, | ) ) | |
| Defendant/Counterclaim-Plaintiff. | ) | |

This matter is before the court on cross-motions for summary judgment by plaintiff/counterclaim-defendant Cornhusker Energy Lexington, LLC ("Cornhusker") and defendant/counterclaim-plaintiff Prospect Street Ventures' ("Prospect").  Filing Nos. 36, 86.  This action involves an Engagement Agreement ("the agreement" or "the contract") between Cornhusker and Prospect.  In the agreement, Prospect agreed to find investors for an ethanol facility project proposed by Cornhusker and Cornhusker agreed to pay Prospect a percentage of the investment capital that was raised.

In its amended complaint, Cornhusker alleges fraud in the inducement to enter into the contract (Claim I).  It also asserts that the agreement is unenforceable under  in violation of Section 29(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78cc(b), because Prospect acted as an unlicensed broker/dealer in soliciting investors, in violation of 15 U.S.C. §§ 79o, 78c(a)(4)(A),  and corresponding state securities law, N.Y. Gen. Bus. Law § 359e (Claims II and IV).  Filing No. 22, Amended Complaint.  Also, Cornhusker alleges breach of the contract and breach of fiduciary duty as a result of Prospect's prohibited conduct and its failure to perform under the contract.  (Claims III and V).  *Id.*

Prospect denies Cornhusker's allegations and asserts as affirmative defenses: the statute of limitations, the limitation-of-liability clause of the contract, consent, unclean hands, performance, waiver, laches, the parol evidence rule, Cornhusker's prior breach, ratification and set-off. Filing No. 31, Answer and Counterclaim at 5-6. Prospect counterclaims for breach of the contract (Claim I). *Id.* at 11-12. It also claims indemnity under the Agreement and recovery of its attorneys fees (Claims II and III). *Id.*

In reply to Prospect's counterclaim, Cornhusker denies the allegations and alleges as affirmative defenses that Prospect failed to perform conditions precedent to the contract, that the fee Prospect seeks is an illegal penalty, that the contract is void and that it was fraudulently induced to enter the contract. Filing No. 32, Reply at 4-6. Cornhusker further asserts that the agreement is unconscionable and asserts the defenses of unclean hands and estoppel. *Id.* at 6-7.

Prospect moves for a summary judgment of dismissal on all of Cornhusker's claims. It argues that all of Cornhusker's claims are barred by the contract's limitation-of-liability clause. It also argues that it is entitled to judgment on Cornhusker's fraud in the inducement claim (Claim I) on the ground that the alleged misrepresentations are directly contradicted by the parties' subsequent written agreement, are legally ineffective as a matter of law, and were not relied upon by Cornhusker. Prospect further argues that it is entitled to judgment in its favor on Cornhusker's federal and state claims for rescission (Claims II and IV) because undisputed evidence shows that Prospect did not act as broker-dealer subject to the registration requirements of the Exchange Act. It also argues that the rescission claims are barred by the applicable statute of limitations and asserts that, as a matter of law, an alleged breach of state securities laws will not void a contract. Finally, it argues that Cornhusker fails to state a claim for breach of fiduciary duty (Claim

V) because the contract provides that Prospect has no fiduciary duties to Cornhusker. Prospect has not correspondingly moved for summary judgment with respect to its breach of contract claim against Cornhusker.

Cornhusker opposes Prospect's motion and seeks summary judgment on its claim that the contract is void as a violation of securities laws. It asserts that following the execution of the agreement, Prospect and its representatives engaged in activities that require Prospect to be licensed as a broker-dealer under the Exchange Act and that the contract is void as a matter of law. It also argues that Cornhusker Holding Company is a separate entity, is not a party to the agreement and is not liable for the obligations of Cornhusker Energy Lexington, LLC. Further, it argues that, if the contract is enforceable, Prospect's fee is capped under the agreement at $350,000. In addition, Cornhusker seeks summary judgment on Prospect's claim for attorneys' fees, arguing that recovery of attorneys' fees is barred as a matter of law.

## I. BACKGROUND

The parties agree that the following undisputed facts are established. On August 4, 2003, Prospect Street Ventures entered into the agreement at issue with Cornhusker Energy Lexington, LLC. Filing No. 38, Index of Evidence, Ex. 2 (hereinafter, "agreement" or "contract"). Cornhusker is a Nevada limited liability company ("LLC") headquartered in Greenwood, Nebraska with its principal place of business in Ralston, Nebraska. Prospect Street Ventures is a Delaware LLC with its principal place of business in New York, New York. The evidence before the court establishes that the contract was executed by Tydd Rohrbough, of Cornhusker Energy, Lexington, LLC, and John Barry, of Prospect Street Ventures. *Id.* at 7. The agreement provides that Prospect would use "reasonable efforts" and would act as an "advisor and consultant" to "identify and introduce sources of capital

3

to provide financing" for a "possible transaction." *Id.* at 1-2, ¶ ¶ 1 & 3. The parties contemplated that the transaction involved Cornhusker's development, construction, and operation of an ethanol facility in Lexington, Nebraska. Filing No. 52, Ex. 2, Deposition of John Barry ("Barry dep.") at 28. The agreement expressly provides that Prospect would "not act in the capacity of a broker or dealer in securities." Agreement at 1, ¶ 3. Cornhusker agreed to make available the documents, reports, studies, and information required for Prospect to fulfill its obligations. *Id.*, ¶ 2. Prospect agreed not to "modify the Documents or supply any Prospective Investor with any other written information which is not specifically included in the Documents without the prior written consent of [Cornhusker]." *Id.* at ¶ 3. Both parties disclaimed any intention to impose "fiduciary obligations" on each other "by virtue of the engagement contemplated by the agreement. *Id.* at 5, ¶ 13. Further, the agreement specified that it did "not constitute an express or implied commitment or undertaking on the part of [Prospect] to provide financing and does not ensure the successful arrangement or completion of any Transaction or any portion thereof . . . ." *Id.*, ¶ 14. Cornhusker acknowledged that it was a sophisticated business enterprise, and also acknowledged and agreed that Prospect was being retained to assist in its efforts to consummate a transaction and not to advise Cornhusker "as to the underlying business decision to effect a transaction." *Id.* The parties indemnified each other from any and all liability arising from or relating to "this Engagement or any transaction" except to the extent that such liability was caused by the other's bad faith or willful misconduct. *Id.* at 5-6, ¶ 15.

The Agreement provided for payment to Prospect if Cornhusker (or any direct or indirect subsidiary) entered "into an agreement with any investor or partner introduced, facilitated or assisted by [Prospect], directly or indirectly, or any other party introduced,

4

facilitated or assisted by such investor or partner . . . within a period of two (2) years from the Termination Date of this Agreement." *Id.* at 4, ¶ 10.  The agreed-upon compensation included "a consulting fee of $50,000 upon execution and $15,000 per month beginning 90 days after execution," as well as a success fee of varying percentages of the gross proceeds of the transaction depending on the type of capital involved. *Id.* at 2-4 ¶ 5(a)(I) - (v).  The Agreement also provided that Prospect could invest one million dollars in exchange for a 10% equity interest if were to invest within 15 days of the execution of the Agreement. *Id.* at 4, ¶ 5(d).  Prospect was also granted a right of first refusal to invest "up to $2,000,000 of additional capital for up to two years after the execution of the Agreement, at the best terms available if and when additional capital is required." *Id.,* ¶ 6.

The term of the agreement was one year, after which either party could terminate with ten days' notice, but Cornhusker had the right to terminate the Agreement 90 or 180 days after the execution if it did not believe that Prospect had been "achieving satisfactory results." *Id.* at 4 ¶ 9.  The parties agreed that the contract would be governed by the laws of the state of New York. *Id.* at ¶ 16.  The agreement also contained an integration clause as follows: "the Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes all prior agreements and understandings." *Id.*

The evidence shows that Cornhusker's Tydd Rohrbough was previously employed as a registered representative of a licensed broker/dealer and worked in the securities industry.  Filing No. 38, Ex. A, Deposition of Tydd Rohrbough ("Rohrbough dep.") at 19, 26.  Prospect's John Barry is currently a registered representative and his license is sponsored by Greenfield Securities, Inc.  Barry dep. at 74.  He was a registered representative at the time of the contract.  *Id.*  Barry entered into an agreement with Thomas Apperson and

5

Walter Van Eps Parker, whom he characterized as "subcontractors," to assist in performing the contract, and agreed to pay them 25% of any fees that Prospect earned from Cornhusker.[1]  *Id.* at 53.  In October 2003, Barry also contracted with Norman Noplock to perform introductory services related to the Cornhusker project.  Filing No. 52, Index of Evidence, Ex. 5, Deposition of Thomas Apperson ("Apperson Dep.") at 20-23.

Barry, Apperson, Parker, Noplock and other agents of Prospect worked to identify and introduce sources of capital to Cornhusker beginning in August 2003 through January 2004.  *See, e.g.,* Barry Dep. at 141-215; Filing No. 52, Index of Evidence, Ex. 3, Barry Deposition Exhibits Nos. 1-106; Ex. 4, Deposition of Walter Van Eps Parker, ("Parker dep.") at 78-80; Apperson dep. at 78-89, 99-100.  Tydd Rohrbough terminated the contract, effective February 9, 2004.  Rohrbough dep. at 132.  It is undisputed that neither Prospect nor any of its predecessors has ever been registered as a broker-dealer.  Barry dep. at 301.  There is evidence that Prospect's agents initially contacted representatives of the four entities who eventually invested in the Cornhusker project and introduced them to Rohrbough.[2]  See Barry dep. at 241-265; Parker dep. at 48-52, 161-70, 194; Apperson dep. at 78-84, 100-102, 164; Filing No. 52, Index of Evidence, Ex. 6, Deposition of Ian Haft ("Haft dep.") at 231-32, 235-36; Filing No. 117, Index of Evidence, Ex. 7, Deposition of Ezra Field ("Field Dep.") at 23-67.

## II. DISCUSSION

### A. Law

---

[1] That agreement is the subject of another action pending in this court.  Cornhusker filed an action against Thomas Apperson and Walter Van Epps Parker seeking a declaration that it is not obligated to pay them any sum, including a demanded 2% fee.  Apperson and Parker counterclaimed, asserting that Apperson and Parker continued, at Cornhusker's request, to seek investors for Cornhusker after the contract between Prospect and Cornhusker was terminated.

[2] Those entities were ACI Capital ("ACI"), Central Hudson Energy ("CHE"), Trust Company of the West ("TCW"), and West LB ("WLB").

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 (c); *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995).  The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party.  Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Therefore, if the moving party does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence.  *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational Inc.*, 825 F.2d 167, 173 (8th Cir. 1987).  Once a party meets its initial burden, however, the opposing party may not rest on the allegations of its pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.  *See* Fed. R. Civ. P. 56(e); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998).

In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations.  *Kenney v. Swift Transp. Co.*, 347 F.3d 1041, 1044 (8th Cir. 2003).  Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate.  *Mansker,* 54 F.3d at 1326.

In diversity cases, the forum state's choice of law rules govern.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Nebraska follows the Restatement (Second) of Conflicts of Laws.  *Inacom Corp. v. Sears, Roebuck & Co.*, 254 F.3d 683, 687 (8th Cir. 2001).  The restatement provides, with respect to tort claims, the law of the state with the most significant connection to the tort applies.  *See* Restatement (Second) of Torts, §§ 145, 148.   However, when the relevant legal principles are the same in both

states, "what has come to be called a false conflict" is presented and the court need not resolve the choice of law issue. *See A.P. Leonards v. Southern Farm Bureau Cas. Ins. Co.*, 279 F.3d 611, 612 (8th Cir. 2002).

There is no substantial difference between Nebraska law and New York law with respect to the tort claim of fraud in the inducement of a contract. *Compare Urquhart v. Philbor Motors, Inc.,* 780 N.Y.S.2d 176, 176-77 (N.Y. App. Div. 2004) (stating that the essential elements of a cause of action based on fraudulent representations are representation of a material existing fact, falsity, scienter, reliance, and injury) *with Four R Cattle Co. v. Mullins*, 570 N.W.2d 813, 816 (Neb. 1997) ("[i]n order to maintain an action for fraudulent misrepresentation, a plaintiff must allege and prove the following elements: (1) that a representation was made; (2) that the representation was false; (3) that when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) that it was made with the intention that the plaintiff should rely upon it; (5) that the plaintiff reasonably did so rely; and (6) that the plaintiff suffered damage as a result").

With respect to a contract claim, Nebraska courts generally give effect to the parties' choice of law. *Vanice v. Oehm*, 526 N.W.2d 648, 651 (Neb. 1995) (adopting Restatement (Second) of Conflict of Laws § 187(1)). The chosen state's law will apply unless: 1) another state has a materially greater interest in the issue; and 2) the chosen law would violate a fundamental policy of the state with the greater interest. *Id.*; *JRT, Inc. v. TCBY Systems, Inc.*, 52 F.2d 734, 739 (8th Cir. 1995).

Under New York law, if a contract recites that all of the parties' agreements are merged in the written document, parol evidence is not admissible to vary, or permit escape from, the terms of the integrated contract. *Manufacturers Hanover Trust v. Yanakas,* 7

8

F.3d 310, 316 (2d Cir. 1993).  Such a general merger clause is ineffective, however, to preclude parol evidence that a party was induced to enter the contract by means of fraud. *Id.*  Thus, even when the contract contains "an omnibus statement that the written instrument embodies the whole agreement, or that no representations have been made," a party may escape liability under the contract by establishing that he was induced to enter the contract by fraud.  *Id.* (noting that "in order to be considered sufficiently specific to bar a defense of fraudulent inducement, a contract must contain explicit disclaimers of the particular representations that form the basis of the fraud in the inducement claim.")[3]

Federal law governs questions involving the interpretation of a federal statute. *Hossaini v. Western Missouri Medical Center,* 140 F.3d 1140, 1143 (8th Cir. 1998). However, equitable determinations are governed by the law of the forum.  *See Regional Properties, Inc. v. Financial & Real Estate Consulting Co.,* 678 F.2d 552, 562-63 (5th Cir. 1982).

Congress's purpose in enacting the securities laws was to regulate investments, in whatever form they are made and by whatever name they are called.  *SEC v. Edwards,* 540 U.S. 389, 393 (2004); *Landreth Timber Co. v. Landreth,* 471 U.S. 681, 686 (1985). To that end, "securities" are defined broadly "to encompass virtually any instrument that might be sold as an investment."  *Id.* (*quoting Reves v. Ernst & Young,* 494 U.S. 56, 61 (1990). Thus, securities include notes, stock, treasury stock, security futures, bonds, debentures, investment contracts, or any instrument commonly known as a "security."

---

[3]Nebraska law is to the same effect.  Proof of prior or contemporaneous oral agreements that alter, vary, or contradict the terms of a written agreement are generally inadmissible under the parol evidence rule, however, the parol evidence rule does not prevent reception or consideration of evidence to prove promissory fraud. *Abboud v. Michals,* 491 N.W.2d 34, 39 (Neb. 1992); *Abbott v. Abbott*, 195 N.W.2d 204, 208 (Neb. 1972).  A merger clause, without more, is ineffective to preclude a trier of fact from considering whether fraud induced formation of the bargain.  *Camfield v. Olsen*, 164 N.W.2d 431 (Neb. 1969).

*Edwards,* 540 U.S. at 61 n.1; *see also Landreth*, 471 U.S. at 685-86 n.1.  A particular scheme is an investment contract if "the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others."  *SEC v. W.J. Howey Co.,* 328 U.S. 293, 298-99 (1946).  The definition "embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits."  *Id.* (relying on definitions under state "blue sky" laws that had defined an investment contract as "a contract or scheme for 'the placing of capital or laying out of money in a way intended to secure income or profit from its employment,'" and had "uniformly applied" that definition to "a variety of situations where individuals were led to invest money in a common enterprise with the expectation that they would earn a profit solely through the efforts of the promoter or [a third party]") (*quoting State v. Gopher Tire & Rubber Co.*, 177 N.W. 937, 938 (Minn. 1920)).

In general, the Exchange Act provides that any person who engages in the business of effecting transactions in securities for the account of others is a broker and is therefore required, in the absence of an applicable exemption, to register as a broker/dealer with the Securities and Exchange Commission.  15 U.S.C. § § 78c(a)(4)(A), 78o(a)(1)(stating "[i]t shall be unlawful for any broker or dealer . . . to make use of the mails or any means or instrumentality of interstate commerce to affect any transactions in, or to induce or attempt to induce the purchase or sale of, any security . . . unless such broker or dealer is registered in accordance with subsection (b) of this section").  The term "effecting securities" has also been interpreted broadly.  *See Massachusetts Fin. Servs. Inc., v. Securities Investor Prot. Corp.,* 411 F. Supp 411, 415 (D. Mass.), *aff'd*, 545 F.2d 754 (1st Cir. 1976) (holding that a person effects transactions in securities if he or she participates

in such transactions "at key points in the chain of distribution").  In a series of no-action letters, the staff of the Securities and Exchange commission ("SEC") has indicated that in certain limited circumstances, a person or entity may perform a narrow scope of activities without triggering booker/dealer registration requirements.  *See, e.g., Mike Bantuveris,* 1975 SEC No-act. LEXIS 2158 (Oct. 23, 1975) (referring to "merely act[ing] as a finder in bringing together the parties to transactions involving the purchase and sale of securities"). A finder, however, will be performing the functions of a broker-dealer, triggering registration requirements, if activities include:  analyzing the financial needs of an issuer, recommending or designing financing methods, involvement in negotiations, discussion of details of securities transactions, making investment recommendations, and prior involvement in the sale of securities.  *See, e.g., John Woods. Loofbourrow Associates, Inc.,* 2006 SEC No-Act. LEXIS 523 (June 29, 2006)*; Globaltec Solutions, LLP, and CommandTRADE, LP,* 2005 SEC No-Act. LEXIS 868 (Dec. 28, 2005);  *Dominion Resources, Inc.,* 2000 SEC No-act. Lexis 304 at *2 (Mar. 7, 2000) (reversing earlier position); *John Wirthlin,* 1999 SEC No-Act. LEXIS 83 (Jan 19, 1999); *Davenport Management Inc.,* 1993 SEC No-Act. LEXIS 624 at *13 (Apr. 13, 1993); and *C&Woods Portfolio Management,* 1989 SEC No-Act. LEXIS 1286 at *3 (July 20, 1989). Transaction-based compensation, or commissions are one of the hallmarks of being a broker-dealer.  *See e.g., Loofbourrow,* 2006 SEC No-Act. LEXIS  523 at *5 (incoming letter to SEC).  The underlying concern has been that transaction-based compensation represents a potential incentive for abusive sales practices that registration is intended to regulate and prevent.  *Id.*

The Exchange Act provides for rescission of contracts made in violation of its requirements.  15 U.S.C. § 78cc(b) (hereinafter, "Section 29(b)").  Section 29(b) provides, in relevant part:

> Every contract made in violation of any provision of this title or of any rule or regulation thereunder, and every contract (including any contract for listing a security on an exchange) heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this title or any rule or regulation thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract, and (2) as regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder with actual knowledge of the facts by reason of which the making or performance of such contract was in violation of any such provision, rule or regulation . . .

15 U.S.C. s 78cc(b) (emphasis added).  The provision does not apply to actions involving fraud in the maintenance of reserves under 15 U.S.C. § 78o(c)(3), 15 U.S.C. § 78cc(b)(2)(A), and limits the time in which a rescission action involving allegations of manipulative or deceptive practices and fictitious quotes in the sale of securities (securities fraud or a Section 10b or Rule 10b-5 violation) may be brought.  15 U.S.C. § 78cc(b)(2)(B) (a rescission action for securities fraud must be "brought within one year after the discovery that such sale or purchase involves such violation and within three years after such violation)."  By its terms, the statute of limitation provision applies only to alleged violations of the securities laws that involve securities fraud.  *Gatto v. Meridian Med. Assocs., Inc.,* 882 F.2d 840, 842 (3d Cir. 1989).

When a federal statute does not set out a limitations period, Eighth Circuit precedent dictates application of the most analogous state statute of limitations.  *Deviries v. Prudential-Bache Securities, Inc.,* 805 F.2d 326, 328-29 (8th Cir. 1986).  In Nebraska, the statute of limitations for actions involving the sale of securities is three years.  Neb. Rev.

Stat. § 8-1118(3).  Correspondingly, an action that is exclusively equitable is governed by the doctrine of laches. *See Russell v. Todd,* 309 U.S. 280, 287 (1940) (stating that equity will not aid a plaintiff whose unexcused delay, if the suit were allowed, would be prejudicial to the defendant); *Algrant v. Evergreen Valley Nurseries Ltd. P'ship*, 126 F.3d 178, 185 (3d Cir. 1997).  Moreover, a claim that would be barred if brought independently can be raised defensively.  *Id.* at 183.

Rescission of a contract pursuant to Section 29(b) is not available without an underlying violation of the substantive provisions of the securities laws. *See National Union Fire Insurance Co. v. Turtur*, 892 F.2d 199, 206 n. 4 (2d Cir. 1989).  A violation of the registration requirements can form the basis for rescission under section 29(b). *Boguslavsky v. Kaplan*, 159 F.3d 715, 722 n.6. (2d cir. 1998); *Regional Properties, Inc. v. Financial & Real Estate Consulting Co.,* 752 F.2d 178, 182 (5th Cir. 1985); *Western Fed. Corp. v. Erickson,* 739 F.2d 1439, 1443-44 n. 5 (9th Cir.1984); *Couldock & Bohan, Inc. v. Societe Generale Sec. Corp.,* 93 F. Supp. 2d 220, 233 (D. Conn. 2000) (all allowing rescission claims based on allegations of failing to properly register as a broker-dealer). The weight of authority thus clearly supports the existence of an implied right of action to seek rescission of a contract under Section 29(b).  *See id.*  Also, Section 29(b) can furnish an affirmative defense.  *GFL Advantage Fund, Ltd. v. Colkitt,* 272 F.3d 189, 207 (3d Cir. 2001)(establishing elements of 29(b) affirmative defense in context of Section 10(b) and Rule 10b-5).  In the Eighth Circuit, the application of Section 29(b) has not been limited to only those contracts that by their express terms violate the securities laws.  *See Naftalin & Co. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 469 F.2d 1166, 1182, n. 25 (8th Cir. 1972).

Under Section § 29(b), a contract is not automatically "void," but merely voidable at the option of the innocent party. *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 387-88 (1970) (noting that the language of § 29(b) establishes that the a guilty party is precluded from enforcing the contract against an unwilling, innocent party, but it does not compel the conclusion that the contract is a nullity, creating no enforceable rights even in a party innocent of the violation); *SEC v. Levine*, 881 F.2d 1165, 1176 (2d Cir. 1989)(stating that "the contract remains in force until the innocent party exercises his right to have it judicially set aside"); *see also Reserve Life Ins. Co. v. Provident Life Ins. Co.*, 499 F.2d 715, 726 (8th Cir.1974); *Greater Iowa Corp. v. McLendon*, 378 F.2d 783, 792 (8th Cir.1967). Section 29(b) is a "legislative direction to apply common-law principles of illegal bargain" in the context of securities law. *Occidental Life Ins. Co. v. Pat Ryan & Associates, Inc.,* 496 F.2d 1255, 1266 (4th Cir. 1974).

Accordingly, the equitable defenses of laches, estoppel, and *in pari delicto* are available in opposition to a section 29(b) action. *See Regional Properties, Inc. v. Financial & Real Estate Consulting Co.,* 678 F.2d at 562-63; *Hayden v. McDonald,* 742 F.2d 423, 435 (8th Cir. 1984), *overruled on other grounds, Austin v. Loftsgaarden,* 768 F.2d 949, 953 n.6 (8th Cir. 1985) (involving Minnesota blue sky laws); *Couldock & Bohan, Inc.,* 93 F. Supp. 2d at 233. The essence of the *in pari delicto* defense is that one party cannot recover against another when both are equally at fault. *Hayden,* 742 F.2d at 435 (finding parties equally culpable in nonregistration violation). As the *in pari delicto* doctrine is generally defined, both parties at fault in an illegal contract are denied judicial relief. *In re Leasing Consultants Inc.,* 592 F.2d 103, 110 (2d Cir.1979). However, a party will not be regarded as *in pari delicto* if, "even though he knew or had reason to know that the bargaining was illegal or immoral, he was induced to participate in it by fraud or duress or

14

by the use of influence derived from superior knowledge, mental power, or economic position." *Loewenstein v. Midwestern Inv. Co.,* 149 N.W.2d 512, 516 (Neb. 1967).

Thus, "in deciding how to fashion a remedy in the area of illegal bargains, the type and degree of illegality become high important factors." *Occidental,* 496 F.2d at 1266; *see also Naftalin & Co.,* 469 F.2d at 1182 (stating that only an "unwilling innocent party" can invoke Section 29(b) and to "absolve [a party] of all contractual obligations after it had instigated and perpetuated" illegal schemes would be an inequitable and gratuitous result). "'[T]here is a conspicuous lack of judicial enthusiasm' for rescission when there has been performance by the violator." *Occidental,* 496 F.2d at 1266 *(quoting Pearlstein v. Scudder & German,* 429 F.2d 1136, 1141 (2d Cir. 1970)).

### B.  Analysis

#### 1.  Choice of Law

The parties' submissions involve several issues that can be resolved as a matter of law.  First, regarding choice of law, the contract specifies that it is governed by the law of New York.  The court has not been presented with evidence or argument that application of New York law to the contract would be contrary to the public policy of Nebraska.  There is essentially no conflict between the law of Nebraska and the law of New York with respect to the fraud in the inducement claim.  Accordingly, New York law will be applied to the breach of contract claims and Nebraska law will be applied to the fraud in the inducement claims and defenses.

#### 2.  Prospect's Motion for Summary Judgment

#### a.  Fraud in the Inducement Claim

Under Nebraska law, the court finds that Prospect's motion for summary judgment on Cornhusker's fraud in the inducement claim should be denied.  The court finds that

15

neither the express recitations in the contract nor the integration or merger clause preclude Cornhusker's claim.  Cornhusker relies on Prospect's alleged misrepresentations that (1) no broker-dealer registration was necessary, and (2) it would invest in the project as the foundation for this claim.  Although the contract does not impose an obligation on Prospect to invest in the project, and states that Prospect had not committed to invest, those provisions of the contract do not preclude a representation to invest.  The contracts provision of an incentive for early investment and first right of refusal for future investment show that some level of investment, not limited to timing or amount, was contemplated by the parties.

Similarly, the court finds that the limitation -of-liability clause of the contract does not preclude Cornhusker's fraud in the inducement claim.  A party cannot contract away its liability for fraud.  In any event, the fraud allegations involve wilful misconduct and bad faith and do not fall within the purview of the clause.  There are genuine issues of material fact with respect to the elements of Cornhusker's fraud in the inducement claim.

### b.  Rescission Claims

The court first finds that Cornhusker's rescission claim is not barred by the statute of limitations.  By its terms, the limitations clause is inapplicable because Cornhusker is not seeking rescission of a transaction for violation of section 15(c)(1) of the statute which prohibits use of manipulative, deceptive, or fraudulent devices by brokers or dealers.  The underlying violation of securities law at issue here is failure to properly register, not fraud in the sale of securities.  The action was filed well within the three-year period under the most analogous state law statute of limitations.  Furthermore, the doctrine of laches does not bar the claim.  Cornhusker cannot be said to have unreasonably delayed the filing of this action causing prejudice to Prospect.  Even if the one-year statute applied, Prospect

16

has not shown that Cornhusker knew or should have known of the alleged securities law violation before October 1, 2003, one year prior to the filing of the action in Douglas County District Court on October 1, 2004.   Moreover, Cornhusker can invoke rescission as a defense without triggering the statute of limitations.   The court finds Cornhusker's action was timely filed.

The court also rejects Prospect's contentions that the transaction at issue is not covered by the securities laws and that its actions did not effect a transaction in securities as a matter of law.   Cornhusker's allegations, if proven, would show under existing precedent that the ultimate transaction was covered by securities laws.   Whether Prospect's actions "effected" that transaction is a matter for resolution by the court.   The evidence shows, at the least, that there are genuine issues of material fact with respect to the timing, extent, and effect of Prospect's activities.   Further, the court rejects Prospect's contention that Cornhusker cannot maintain an action for rescission because the alleged prohibited conduct did not involve performance of the contract, but rather the alleged nonperformance, or breach, of the contract.   Prospect contends that the contract must be illegal on its face to warrant rescission.   That position has not been adopted in this Circuit.

The court thus finds that Cornhusker has stated a cognizable claim for rescission based upon Prospect's allegedly prohibited conduct.   Additionally, Cornhusker can raise rescission as an equitable defense to Prospect's breach of contract claim.   Prospect, in turn, is entitled to assert equitable defenses.

The court finds that there are genuine issues of material fact with respect to both the equitable claim and equitable defenses.   There are conflicts in testimony with respect to the nature, extent, and timing of the activities undertaken by Prospect and its agents. There are conflicts in the testimony regarding the preparation and/or alteration of certain

17

documents.  The record is also unclear on the nature and extent of Cornhusker's actual or constructive knowledge of, or complicity in, any allegedly prohibited conduct. Cornhusker is entitled to rescission only if it is an innocent party.  On the record before the court, the court cannot resolve the issue of whether Prospect's activities amounted to broker-dealer activities or whether, if they did, equity would require the court to declare the contract unenforceable.   Resolution of the equitable claim and defenses will involve assessments of credibility and intent, as well as the development of full record.  These findings apply with equal force to the state law rescission claim.  Accordingly, the court finds that Prospect's motion for summary judgment on Cornhusker's equitable claims (Claims II and IV) should be denied.

### c.  Breach of Contract Claim

With respect to the breach of contract claim, Prospect's motion for summary judgment is again premised on the purported limitation-of-liability clause of the contract. If the court were to construe that clause as barring an action for breach of the very contract in which it is contained, there would be a failure of consideration for the contract.  Such a construction would defy logic.  Moreover, any breach of a contract violates the implied duty of good faith and fair dealing and by definition amounts to bad faith.  The court notes there are disputed issues of fact with respect to the parties' performance under the contract.

### d.  Breach of Fiduciary Duty Claim

Prospect's motion for summary judgment will be granted with respect to its claim for breach of fiduciary duties.  Cornhusker premises that claim on its assertion that Prospect acted as a broker-dealer in connection with the agreement.  However, there is no dispute that Prospect was never licensed as a broker-dealer.  Whether it performed functions similar to a broker-dealer that would require registration under the act is a disputed issue.

18

Regardless, a violation of the Exchange Act's registration requirement does not give rise to a fiduciary duty. There has been no showing of any special relationship between the parties that would impose a fiduciary duty and there is no fiduciary duty imposed under the contract. Accordingly, Cornhusker's claim for breach of fiduciary duty will be dismissed.

### 3. Cornhusker's Motion for Summary Judgment

### a. Rescission Claim

Cornhusker's motion for summary judgment in its favor on the rescission claim will be denied for the reasons set forth above in connection with Prospect's motion. There are genuine issues of material fact with respect to both the claim and its defenses and any appropriate remedy. Even if the court were to find the contract unenforceable, the issues presented by both parties require that the court hear and evaluate the evidence in order to fashion an equitable remedy.

The court anticipates that disputed issues of fact with respect to the fraud in the inducement claim and defense and the breach of contract claim will be tried to a jury. The court will make its equitable determination in reliance on the same evidence, together with any evidence presented to the court outside of the presence of the jury. [4]

The court notes that both parties appear to have been operating in the area of private-placement-broker-dealers that has been referred to as a "vast gray market of securities brokerage." *See* ABA Section of Business Law, Report and Recommendation of the Task Force on Private Placement Broker-Dealers, 60 Bus. Law. 959, 960 (May 2005) (noting the "major disconnect between the various laws and regulations applicable to securities brokerage activities and the methods and practices actually in daily use by

---

[4]Cornhusker has also filed a motion for a bifurcated trial, Filing No. 186. In light of this determination, the court finds that motion should be denied.

which the vast majority of capital is raised to fund early stage businesses in the United States")(hereinafter, "ABA Report").  Although legislation on the horizon may ameliorate the situation, the fact remains that, "[n]otwithstanding the various labels, and despite the fact that a great number of the brokers, funded businesses, and even sometimes their attorneys, do not realize that they are operating in violation of securities laws; simply put, they are unlicensed securities brokers whose fee contracts are unenforceable and whose activities are, in fact, illegal."  *Id.*; *see also* Final Report of the Advisory Committee on Smaller Public Companies to the U.S. Securities and Exchange Commission, April 23, 2006, available at http://www.sec.gov (advocating a cost-effective scheme of registration and regulation).  The present system includes private placement broker-dealers who, although operating on the edge of legality, adhere to honest and ethical business practices, as well as those who could be characterized as charlatans or dishonest, unethical brokers. *See* ABA Report at 961.  Distinguishing these parties' place on that continuum of behavior is relevant to the court's equitable determination.

### b.  Attorneys' Fees Claim

Prospect's claim for attorneys' fees is dependent on its recovery in this action and will be a matter for resolution by the court.  Determination of the attorneys' fees issue is premature at this time.  Thus, Cornhusker's motion for summary judgment on that claim will denied.  Accordingly,

IT IS HEREBY ORDERED that:

1.    Prospect's motion for summary judgment (Filing No. 36) is denied with respect to Claims I through IV of Cornhusker's amended complaint;

2.    Prospect's motion for summary judgment (Filing No. 36) is granted with respect to Claims V of Cornhusker's amended complaint;

20

3.     Claim V of Cornhusker's amended complaint (breach of fiduciary duty) is

dismissed;

4.     Cornhusker's motion for summary judgment (Filing No. 86) is denied;

5.     Cornhusker's motion for a bifurcated trial (Filing No. 186) is denied.

DATED this 12th day of September, 2006.

BY THE COURT:

s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
United States District Judge